UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| VALERIA BENNETT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case Number: 2:14-cv-01362-JHE |
| ) | |
| CAROLYN W. COLVIN, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. | |

**MEMORANDUM OPINION**[1]

Plaintiff Valeria Bennett ("Bennett") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her application for Supplemental Security Income ("SSI"). (Doc. 1). Bennett timely pursued and exhausted her administrative remedies. This case is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

**I. Factual and Procedural History**

Bennett was a fifty-six year old female at the time of the Administrative Law Judge's ("ALJ") decision. (Tr. 10, 149). Bennett has at least a high school education and past relevant work as a hospital cleaner. (Tr. 33, 173-74).

Bennett filed her applications for SSI on April 13, 2011. (Tr. 81, 149). The

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 11).

Commissioner initially denied Bennett's application, and Bennett requested a hearing before an ALJ. (Tr. 90). After a hearing, the ALJ denied Bennett's claim on April 5, 2013. (Tr. 14). Bennett sought review by the Appeals Council, but it declined her request on May 15, 2014. (Tr. 1-6). On that date, the ALJ's decision became the final decision of the Commissioner. On July 15, 2014, Bennett initiated this action. (*See* doc. 1).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has

---

[2]In general, the legal standards applied are the same whether a claimant seeks Disability Insurance Benefits ("DIB") or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4) whether the claimant can perform his or her past work; and
(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has

---

[3]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Bennett had not engaged in substantial gainful activity since April 13, 2011, the application date. (Tr. 12). At Step Two, the ALJ found Bennett has the following severe impairments: diabetes mellitus, hypertension, glaucoma, and early cataracts. (*Id.*). At Step Three, the ALJ found Bennett does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 14).

Before proceeding to Step Four, the ALJ determined Bennett's residual functioning capacity ("RFC"), which is the most a claimant can do despite her impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined Bennett has the RFC to perform medium work as defined in 20 C.F.R. § 416.967(c), with specified limitations. (Tr. 14). Those specified limitations include: can never climb ladders, ropes, or scaffolds, can frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; must avoid exposure to concentrated levels of extreme heat, cold, wetness, and humidity; must avoid all exposure to operational control of moving machinery, working around hazardous machinery, and working at unprotected heights. (*Id.*).

At Step Four, the ALJ determined Bennett is capable of performing her past relevant work as a hospital cleaner, as it does not require the performance of any work-related activities precluded by the RFC. (Tr. 17). In the alternative, the ALJ addressed Step Five, and found, based on Bennett's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy Bennett could perform. (Tr. 18). Therefore, the ALJ determined Bennett has not been under a disability, as defined by the Social Security Act, and denied Bennett's claim. (Tr. 19).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Here, substantial evidence supports the ALJ's determination Bennett failed to demonstrate a disability, and the ALJ applied the proper standards to reach this conclusion. Bennett's primary contention is with the ALJ's RFC finding, and she argues, *inter alia*, the ALJ failed to properly evaluate the medical evidence of record from Dr. Nidhi G. Huff, a consultative examiner, in determining Bennett's RFC. (Doc. 12 at 6-12).

### A. Substantial Evidence Supports the ALJ's RFC Finding

Substantial evidence supports the ALJ's RFC finding. In formulating Bennett's RFC, the ALJ discussed the medical evidence, including opinion evidence and treating records from

Bennett's treating physicians, Dr. Jaquline Perry, Dr. Adam Cole, and Dr. Bethany Martinez, as well as state agency medical consultants Dr. Robert Heilpern and Dr. Nidhi Huff.  (Tr. 12-17).  In addition to reviewing the medical record, the ALJ considered Bennett's testimony, including her subjective complaints of pain and other alleged symptoms.  (*Id.*).

  The ALJ assigned significant weight to the physical RFC assessment completed by non-examining state agency medical consultant Dr. Heilpern, who opined that Bennett could frequently lift/carry twenty-five pounds and occasionally lift/carry fifty pounds, sit, stand, or talk six hours in an eight-hour day, and do unlimited pushing and pulling within those weight limitations.  (Tr. 17, 408).  The ALJ also gave significant weight to Dr. Heilpern's determination that Bennett could perform all postural movements frequently, but could never climb ladders, ropes, or scaffolds.  (Tr. 17, 410).  The ALJ assigned little weight to Dr. Heilpern's opinion that Bennett was limited to frequent handling with her left arm.  (Tr. 17, 410).  Dr. Heilpern's opinion supports the ALJ's RFC finding.

  The ALJ also considered Bennett's treatment records, which support the RFC.  An x-ray of Bennett's right foot in December 2009 showed no bony injury and some degree of degenerative changes.  (Tr. 239).  In January 2011, Dr. Perry, one of Bennett's treating physicians, noted Bennett complained of foot pain but rated her pain at a 0/10, and Dr. Perry observed Bennett's foot pulses were normal and her foot was partially insensate.  (Tr. 289-90, 293).  Dr. Perry noted Bennett was not checking her blood glucose level and was caring for an elderly man who lived with her.  (Tr. 289-90).  Dr. Perry assessed, *inter alia*, treatment compliance problems, hypertension, pigmentary glaucoma, foot pain, and type two diabetes mellitus without complications.  (Tr. 291).  In April 2011, Bennett saw Dr. Perry for a routine follow-up and reported 3/10 pain in her left foot, and reported she felt a little better on her new

medication.  (Tr. 468-69).

Pharmacy records reflect that in April 2011, Bennett admitted she only took her medication a few times per week.  (Tr. 477).  At that time, she admitted she could not report any of her glucose values, even though she claimed she had been monitoring her levels.  (Tr. 477). Five months later, Dr. Perry indicated during a routine appointment that Bennett had no complaint and "fe[lt] ok."  (Tr. 455-56).  Treatment notes in January 2012 indicate that Bennett admitted she had not been testing her blood sugar despite having received her insulin.  (Tr. 431-32).  She claimed for the first time at that visit she was not administering the syringe injections because of her vision, claiming further that she was afraid of syringes.  (Tr. 431-32).  A nurse scheduled Bennett for training to use an insulin pen; however, Bennett cancelled that training appointment.  (Tr. 432).

In March 2012, Bennett saw Dr. Cole after having stepped on glass.  (Tr. 440-41).  At that time, she reported pain at a level of 8/10.  (*Id.*).  On examination, Dr. Cole observed a small, well-healed abrasion and no signs of infection.  (*Id.*).  An x-ray showed she had normal soft tissue, no foreign bodies or significant bony abnormalities, and a heel spur.  (Tr. 419).

When Bennett saw Dr. Perry in May 2012, Bennett reported having pain at a level of 0/10.  (Tr. 562, 566).  She admitted that she had not been taking her insulin or other diabetes medication.  (*Id.*).  Dr. Perry indicated Bennett had normal foot pulse and foot inspections, but she had partial loss of sensation on a foot sensory examination.  (Tr. 564).

During a September 2012 eye appointment with Dr. Martinez, Bennett reported she lost her glasses and ran out of eye drops some time ago, but said her vision was about the same.  (Tr. 538).  After noting Bennett's uncorrected vision was 20/30-2 in her right eye and 20/25-2 in her left eye, Dr. Martinez assessed Bennett as noncompliant with medication and follow-up for

7

pigmentary glaucoma and diabetic retinopathy, and she prescribed replacement glasses and glaucoma eye drops. (Tr. 538-39).

In December 2012, Bennett returned for treatment with Dr. Perry. (Tr. 522). At that time, she reported having left foot pain and admitted she had not used her insulin after one initial month and she was not checking her blood glucose or adhering to her recommended diet. (Tr. 522).

In determining Bennett's RFC, the ALJ also considered Bennett's daily activities, which provide further evidence supporting the RFC finding. (Tr. 16-17). Notably, Bennett reported to the agency in May 2011 that "[she] can do anything a normal person does." (Tr. 198). Bennett reported she cared for her teenaged children, cooked complete meals daily, cleaned her house, did laundry, walked and took public transportation, shopped for 1.5 hours a few times per month, could see and read well with her glasses, and had no problems with her personal care or handling financial matters. (Tr. 190-96, 200, 249). In a May 2011 form Bennett filled out, she denied having any trouble squatting, kneeling, sitting, reaching, seeing, or using stairs. (Tr. 194).

The ALJ also considered the consultative examination conducted by Dr. Huff in June 2011. (Tr. 16-17). Bennett reported occasional numbness and tingling in her hands, but denied those symptoms caused major limitations. (Tr. 390). Dr. Huff found Bennett's uncorrected vision was 20/20 in her right eye and 20/25 in her left eye. (Tr. 391). Bennett had no clubbing or edema in her extremities and was able to perform tandem gait and walk on her heels and toes without an assistive device. (Tr. 391). Dr. Huff observed that Bennett's posture was normal with no spinal or paraspinal deformity or tenderness; she exhibited 5/5 muscle strength in all muscle groups; her sensory examination was normal to pinprick; and her range of motion was normal except for decreased motion in her left thumb. (Tr. 391-92). Dr. Huff diagnosed

diabetes, arthritis, foot pain, glaucoma, and right-sided weakness. (Tr. 392). As to Bennett's functioning, Dr. Huff opined that Bennett could stand for four to six hours with frequent breaks and sit for eight hours without frequent breaks. (Tr. 392). She had limitations in climbing and manipulation, but had no environmental limitations. (Tr. 392).

Finding it was not supported by the medical evidence, the ALJ assigned little weight to Dr. Huff's opinion that Bennett had manipulative limitations and was limited to four to six hours of standing with frequent breaks. (Tr. 17). Substantial evidence supports this determination. As to Bennett's hands, she admitted to Dr. Huff that her alleged symptoms did not majorly limit her functioning, (tr. 390), and nurse notes from May 2012, nearly a year later, indicate Bennett was rated functionally independent with no special needs for her home situation, (tr. 557-58). As to Bennett's purported foot problems, while being treated by Dr. Perry in October 2011, Bennett had no complaints, and in May 2012, her foot was partially insensate but a foot inspection and pulse examination were normal with 0/10 pain reported. (Tr. 564, 566). A March 2012 foot x-ray showed normal soft tissue, no significant bony abnormalities, no foreign bodies, and a heel spur. (Tr. 419). Treatment records show that Bennett was instructed to exercise for at least thirty minutes three times a week, and in December 2012, she reported buying an exercise bike. (Tr. 522, 567). Bennett also reported she walked regularly for transportation. (Tr. 200). Moreover, the ALJ assigned significant weight to Dr. Heilpern's opinion that Bennett could stand or walk for six hours in an eight-hour day, and Bennett does not challenge the weight accorded that finding. (Tr. 408).

Bennett contends the ALJ had a duty to re-contact Dr. Huff for clarification of her opinion if he felt Dr. Huff's evaluation was inadequate or incomplete. (Doc. 12 at 8). However, under these circumstances, there was no need to re-contact Dr. Huff. The regulations on

consultative examinations reports provided that "[i]f the report is inadequate or incomplete, we will contact the medical source who performed the consultative examination . . . and ask that the medical source furnish the missing information or prepare a revised report." 20 C.F.R. § 416.919p(b). Despite this clear standard, Bennett cites no evidence demonstrating Dr. Huff's report was "inadequate or incomplete," and the ALJ made so such determination by simply disagreeing with Dr. Huff's opinion.

Similarly, the ALJ had no duty to order an additional consultative examination as Bennett contends. (Doc. 12 at 8). While the ALJ has a duty to develop a full and fair record, that duty is circumscribed by the regulations. 20 C.F.R. § 416.912(d), (d)(2). An ALJ is not required to seek additional medical evidence so long as the record contains sufficient evidence allowing him to make an informed decision. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007). Additionally, a plaintiff must make a "clear showing of prejudice" before a court may remand the case for further development. *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997). Bennett has made no such showing on appeal, and her speculation is no basis for requiring the ALJ to order another consultative examination. There was sufficient evidence in the record to allow the ALJ to make an informed decision, including medical records from Bennett's treating physicians, and the ALJ did not need to order an additional consultative examination.

To the extent Bennett cites *Coleman v. Barnhart*, 264 F. Supp. 2d 1007 (S.D. Ala. 2003), and argues that the RFC is unsupported by substantial evidence because there was no opinion from a physician precisely matching the limitations in the ALJ's RFC, (doc. 12 at 8-9), there is no such requirement here. The determination of a claimant's RFC is an administrative determination reserved to the Commissioner, not one delegated to medical advisors. *See* 20

C.F.R. § 416.946; Social Security Ruling (SSR) 96-5p, 1996 WL 374183. Furthermore, this Court has expressly held that "the law of this Circuit does not require an RFC from a physician," and declined to follow *Coleman*'s reasoning because it was "inconsistent with the Commissioner's regulations, Supreme Court precedent, and unpublished decisions in this Circuit." *Langley v. Astrue*, 777 F. Supp. 2d 1250, 1258-60 (N.D. Ala. 2011).

The ALJ also properly considered Bennett's subjective complaints in accordance with the regulations and case law, found them not entirely credible, and articulated explicit and adequate reasons supporting his determination. Bennett has not met her burden to show she has functional limitations beyond those found by the ALJ.

**B. Substantial Evidence Supports the ALJ's Finding that Bennett Could Perform Her Past Relevant Work**

The ALJ also properly determined that Bennett could perform her past relevant work as a hospital cleaner. (Tr. 17). A claimant is not disabled if she can perform her past relevant work either as she performed it or as it is generally performed in the national economy. 20 C.F.R. §§ 416.920(f), 416.960(b)(2). To satisfy this burden, a claimant must "show an inability to return to her previous work (i.e., occupation), and not simply to her specific prior job." *Jackson v. Bowen*, 801 F.2d 1291, 1293 (11th Cir. 1986). As explained above, substantial evidence supports the ALJ's RFC finding that Bennett could perform a range of medium work. Accordingly, the ALJ properly found at Step Four that Bennett was capable of performing her past relevant work because the Dictionary of Occupational Titles classifies that position as unskilled, medium work. (Tr. 17-18); *see* DOT § 323.687-010, 1991 WL 672782.

Bennett's contention she should have been found disabled based on the Medical-Vocational Guidelines (the "Grids") is also without merit. (Doc. 12 at 7). Although the ALJ made an alternative Step Five finding that Bennett could perform other work, (tr. 18), the Grids

are irrelevant because the ALJ properly found Bennett could perform her past relevant work at Step Four. 20 C.F.R. § 416.920(a)(4). Substantial evidence supports the ALJ's Step Four finding and the conclusion that Bennett is not disabled.

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Bennett's claim for a Supplemental Security Income is **AFFIRMED** and this action **DISMISSED WITH PREJUDICE.**

DONE this 29th day of September 2015.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE